IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | | |
|---|---|---|
| TERRY PUTMAN, ROB PUTMAN, | ) | |
| on behalf of themselves and all other persons | ) | Case No: 3:10-cv-00072 |
| similarly situated, known and unknown, | ) | |
| IHAB GHADBAN, ALEKSANDER | ) | |
| TURSKIY, ADAM SKRZYNIARZ, STEVEN | ) | |
| CLOONEY, | ) | Judge Presiding |
| Plaintiffs, | ) | The Honorable Judge Vietor |
| | ) | |
| v. | ) | **ORAL ARGUMENT** |
| | ) | **REQUESTED** |
| | ) | |
| GALAXY 1 MARKETING, INC., AND | ) | |
| THE HD CONNECTION LLC, | ) | |
| | ) | |
| Defendants. | | |

**DEFENDANT, GALAXY 1 MARKETING, INC.'S BRIEF IN RESPONSE TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION / TO ISSUE NOTICE TO SIMILARLY
SITUATED PERSONS UNDER 29 U.S.C. §216(b)**

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................... 1

II.   BACKGROUND FACTS ............................................................................................. 1

    A.   Galaxy ..................................................................................................................... 1

    B.   HD Connection, LLC ........................................................................................... 2

    C.   Representative Plaintiffs:  Terry and Rob Putman.................................................. 2

    D.   Each Office Had Different Area Managers and Different Policies ........................ 3

    E.   Different Pay Provisions ........................................................................................ 3

    F.   Plaintiffs Are Late in Filing Their Motion for Conditional Certification ............... 4

III.   ARGUMENT .................................................................................................................. 5

    A.   Plaintiffs' Motion for Conditional Certification Should Be Denied Because It is
        Late and Severely Prejudices Galaxy.................................................................... 5

       i.      As Required by the Local Rules, Plaintiffs' Motion was not Filed Within 180 Days from the Filing of this Action, and Should Be Denied ............................................................................... 5

       ii.     Plaintiffs' Motion Severely Prejudices Galaxy ......................................... 7

   B.   Plaintiffs' Fail to Demonstrate That They Are Similarly Situated to Other Putative Plaintiffs ................................................................................................... 8

       i.      The Law .................................................................................................. 8

       ii.     **The Application of the Economic Realities Test Dictates That Plaintiffs Are Not Similarly Situated Because of the Individualized Determination ............ 9**

       iii.    Plaintiffs Seek a Class of Galaxy ICs, but Representative Plaintiffs were ICs for HD Only ................................................................................... 10

       iv.    The Named Plaintiffs Worked Out of HD's Bettendorf, Iowa Office and Plaintiffs Seek a Nationwide Class ......................................................... 11

       v.     The Putmans Were Paid Differently Than Galaxy's ICs ......................... 12

   C.   Plaintiffs' Proposed Class Fails Because It Is Not Narrowly Tailored To "Similarly Situated" Installers ................................................................. 14

   D.   Plaintiffs' Proposed Collective Action Would Be Unmanageable ...................... 15

   E.   Plaintiffs' Proposed Judicial Notice Fails To Meet the Requirements For Court Authorized Notice ................................................................................... 16

       i.      Plaintiffs' Proposed Notice Fails Because It Gives Opt-In Plaintiffs The Impression of Judicial Sponsorship ....................................................... 16

       ii.     Plaintiffs' Three Separate Methods of Notice are Unnecessary, Overly Burdensome, and Gives the Impression that the Court is Encouraging Individuals to Opt-In ............................................................................. 17

       iii.    Plaintiffs' Are Not Entitled to an Equitable Tolling of the Statute of Limitations ............................................................................................ 17

IV.    CONCLUSION ...................................................................................... 19

Defendant, Galaxy 1 Marketing, Inc. ("Galaxy"), through its attorneys, O'Hagan Spencer LLC, and for its Brief in Response to Plaintiffs' Motion for Conditional Certification / To Issue Notice to Similarly Situated Persons Under 29 U.S.C. §216(b), states as follows:

## I.  INTRODUCTION

On March 17, 2011, Plaintiffs filed a Motion to Issue Notice to Similarly Situated Persons under 29 U.S.C. §216(b) ("Motion") pursuant to their Fair Labor Standards Act ("FLSA") action filed over one year ago against Galaxy and co-Defendant HD Connection, LLC.  Plaintiffs Motion should be denied because:  (1) it was filed late in violation of Local Rule 23, which has extremely prejudiced Galaxy; (2) the representative Plaintiffs were independent contractors of HD – not Galaxy, and Plaintiffs fail to provide *any evidence* that they are similarly situated to other potential plaintiffs; (3) there are significant individualized questions for each member of the proposed collective action; and (4) the nationwide scope of the proposed collective action is too large, too diverse, and too difficult to manage.

## II.  BACKGROUND FACTS

### A.  Galaxy

Defendant, Galaxy 1 Marketing, Inc. [1], is an Illinois Corporation with its corporate headquarters located at 4038 Utica Ridge Rd., Bettendorf, Iowa. *See*, declaration of Dennis Voss attached as Exhibit A. Galaxy has offices in eight states spanning throughout the United States, including, Michigan, Colorado, Illinois, Wisconsin, Indiana, Arizona, Iowa, and Missouri. *See*, Exhibit A; and *See*, Galaxy's Answers to Interrogatories attached as Ex. B.  Galaxy provides installation services to DISH Network ("DISH") customers in twelve states, including, Michigan, Colorado, Illinois, Wisconsin, Indiana, Arizona, Iowa, Missouri, North Dakota, Pennsylvania, and Wyoming. Ex. A and B.  Galaxy hired independent

---

[1] Defendant, Galaxy 1 Marketing, Inc., is not an "employer" of any member of the putative class, as that term is defined under the "FLSA" or the Iowa Minimum Wage Law or the Iowa Wage Payment Collection Law.  Because the instant Motion is not the appropriate context in which to fully address that issue, Galaxy is issuing this opposition to conditional certification and the issuance of notice to other potential putative class members.  In so doing, Galaxy does not waive any future claim or argument that it is not a proper party to this litigation as it is not an "employer." The individualized determination of employee v. independent contractor under the economic realities test in and of itself, however, indicates that a nationwide collective action under the FLSA should not be conditionally certified in this case.

contractors (ICs) to install the DISH systems. Unlike the 'representative Plaintiffs' (the Putmans), contractors Adam Skrzyniarz, Steve Clooney, Aleksandr Turskiy, and Ihab Ghadban, whom all have consented to become party Plaintiffs[2], were independent contractors of Galaxy – not HD. Ex. A.

**B.      HD Connection, LLC**

Co-Defendant, HD Connection LLC ("HD") is a wholly separate entity from Galaxy. Galaxy and HD were owned by different individuals, have no integration of operations, separate labor relations, different management personnel, different human resources personnel, and multiple, separate, and unrelated regional offices unaffiliated with one another[3]. Ex. A.; *and* HD's Response (Doc. 63). One HD location leased an office from Galaxy's Bettendorf, Iowa location and paid rent to Galaxy. Ex. A. On or about January 18, 2009, Galaxy and HD entered into an Independent Contractor Agreement (ICA) whereby HD would install DISH satellite systems. Ex. A. Pursuant to the ICA, HD and/or its contractors, had sole discretion to determine the means and manner of installing the systems. Ex. A.; and see, the HD and Galaxy ICA attached as Exhibit A to Exhibit A. HD entered into ICA's with installation technicians, including Plaintiffs Terry Putman and Rob Putman, to perform DISH system installations. Ex. A. Pursuant to the Agreement, Galaxy paid HD for each system installation. Galaxy did not pay any HD independent contractors. Ex. A. HD was responsible for paying its own independent contractors. Ex. A. Also, HD was required to obtain its own insurances, including, worker's compensation insurance, automobile insurance, and general liability insurance. Attachment A to Exhibit A.

**C.      Representative Plaintiffs:  Terry Putman and Rob Putman**

Named Plaintiffs Terry Putman and Rob Putman (the Putmans) are independent contractors who performed installation services for co-Defendant, HD only in 2009. Ex. A. On May 3, 2009, Terry Putman, entered into an ICA with HD. *See,* Travis Lee's Declaration attached as Exhibit C. On September 8, 2009, Rob Putman entered into an ICA with HD. Ex. C. As HD Independent Contractors,

---

[2] These 4 contractors have filed 'Notice of Consent to Become a Party Plaintiff in a Collective Action Under the FLSA'.

[3] Plaintiffs' Motion asserts that "Galaxy paid wages to persons who worked for HD Connection." (See Doc. 57-1, p. 3). This is false. While three HD employees (non-installers) were on Galaxy's payroll, Galaxy was fully reimbursed by HD for the payroll and benefits. *See*, Ex. A.

the Putmans served as satellite installation technicians for HD wherein each Plaintiff travelled to homes and offices to perform DISH system installations. Ex. A. All of the Putmans' contact regarding their IC relationship was through the owner of HD, Travis Lee.[4] The Putmans never provided installation services or otherwise worked in any capacity for Galaxy. Ex. A. The Putmans never received a paycheck or payment from Galaxy. *See,* Terry and Rob's affidavits attached to Plaintiffs' Motion as Exs. E and F; *See also* attached paychecks issued to the Putmans from HD attached as Group Ex. D.

### D.      Each Galaxy Office Had Different Area Managers, and Different Policies.

From February 2007 to the present, Galaxy has maintained independent operations in the following cities and states:  (1) Niles, Michigan; (2) Frederick, Colorado; (3) Rolling Meadows, Illinois; (4) Cudahy, Wisconsin; (5) Romeoville, Illinois; (6) Indianapolis, Indiana; (7) Tempe, Arizona; (8) Oak Park, Michigan; (9) Bettendorf, Iowa; (10) Crestwood, Illinois; (11) Cedar Rapids, Iowa; (12) Ann Arbor, Michigan; (13) Belton, Missouri; and (14) Maryland Heights, Missouri. Exs. A and B. At each location, Galaxy contracted directly with individual independent contractors (ICs) who would then perform the DISH installations to customers who ordered DISH. Ex. A.

Each of the above locations was operated by a different Area Manager (AM). Ex. E. Each AM had discretion to assign certain work orders to the ICs for that area. Ex. E; *See*, Brian Lee's declaration attached as Exhibit F; Ken Johnson's declaration attached as Exhibit G. The AM assigned work orders to the ICs by considering individual factors, including the IC's skill, efficiency, and whether he/ she received any customer complaints. Exs. F and G.

### E.      Different Pay Provisions

The policy methods for determining the amount of payment for each IC varied at each location. Galaxy field offices followed a three-tiered level payment structure for reimbursing the ICs. Meaning, there were three pay levels and each IC fit into one level and was paid more or less based on what level

---

[4] Plaintiffs allege that they were required to attend a meeting with Shawna Viktor, of Human Resources for Galaxy; however, Viktor was asked by Lee to merely sit on a meeting that the Putmans requested with Travis Lee regarding their status as Independent Contractors because Lee believed Viktor was knowledgeable about employee/independent contractor status.  Viktor made no decisions whatsoever regarding the Putmans at any time.

they were categorized. The individual AM of a particular Galaxy location played an important role for determining what level a particular IC would fall under. Exs. E, F and G. The AM's determination was based upon the IC's skill level, the quality of the completed job, his or her ability to complete the task timely, and whether he or she received any customer complaints. Exs. E, F and G. David Williams, Galaxy's Vice President of Field Operations, relied on the particular AM's policies for recommendations as to which Level an IC should be placed. Exs. E, F, and G.

**F.      Plaintiffs' Are Late In Filing Their Motion for Conditional Certification**

On February 2, 2010[5], Plaintiffs filed their Original Complaint in the Northern District of Illinois, Eastern Division. (Doc. 1). The Complaint was amended on February 15, 2010, and includes an action for alleged violations of the FLSA. (Doc. 6). On May 20, 2010, the Northern District of Illinois granted Galaxy's motion to transfer venue, and transferred this matter to the Southern District of Iowa. (Doc. 24). The transfer was completed on June 7, 2010. (Doc. 26).

During the initial FRCP 26(f) conference in September 2010, counsel for Galaxy advised Plaintiffs' counsel that Galaxy would not agree to issue notice to potential collective action members, and that Plaintiffs would have to file a motion for conditional class certification. On September 30, 2010, the Court adopted the parties' proposed Scheduling Order, including setting a January 31, 2011 deadline for the parties to complete discovery related to the appropriateness of issuing collective action notice (again, because counsel for Galaxy did not agree to automatic issuing of notice). (Doc. No. 47). The Order set a dispositive motion deadline of May 17, 2011, a final pretrial conference date of September 30, 2011, and a jury trial date of October 17, 2011. (Doc. No. 47). On December 7, 2010, Maureen Bantz issued a letter to Galaxy's counsel confirming that Galaxy would not agree to issue notice, and therefore, Plaintiffs would need to bring a motion for conditional class certification. *See*, Bantz letter dated December 7, 2010 attached as Exhibit H.

---

[5] Page 9 of Plaintiffs' Motion states that Plaintiffs' filed their Complaint on February 2, 2007, and therefore want to toll the statute of limitations to that date. Although we believe such a statement contains a typo, it should be noted that the correct filing date for the Complaint was February 2, 2010.

Despite knowing that Galaxy objected to notice being issued, and that Plaintiffs would need to file a motion for conditional class certification back in September 2010, Plaintiffs delayed seven (7) months to file their motion.  Despite seeking over 500 persons in a class, Plaintiffs filed the motion nearly two months <u>after</u> the deadline to complete discovery on the appropriateness of issuing a class action and a mere sixty (60) days prior to the deadline for dispositive motions and seven (7) months prior to the trial. Seemingly acknowledging that they unnecessarily delayed in filing their motion for conditional certification, Plaintiffs have now asked to change the entire scheduling order and on April 11, 2011 filed a motion to extend dispositive motion deadline, pretrial conference and trial date.  (Doc. 62).

### III. <u>ARGUMENT</u>

**A.   PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION SHOULD BE DENIED BECAUSE IT IS LATE AND SEVERLY PREJUDICES GALAXY**

**i.   As Required by the Local Rules, Plaintiffs' Motion was not filed within 180 days from the filing of this action, and should be denied**

The Southern District of Iowa's Local Rule 23 states that, "[i]n any action brought as a class or *representative* action, the party seeking to maintain the action as a class or representative action must, within 180 days after commencement of the action, file a separate motion for certification."  LR 23a (emphasis included).  Over 400 days have passed from the date the Original Complaint was filed (February 2, 2010), and 280 days have passed since this matter was transferred to the Southern District of Iowa (June 7, 2010).  As such, Plaintiffs' motion is late, and should be denied as it was filed in complete disregard of Local Rule 23.

There is no doubt that LR 23 was drafted to apply to more than just a traditional class action lawsuit. Indeed, LR 23 outlines a separate requirement for additional documents and information from parties that seek traditional class certification pursuant to Federal Rule 23.  *See,* LR 23.1a.  Local Rule 23 also specifically includes language to encompass "representative actions."  There is no doubt that a collective action would be considered a "representative action", as named plaintiffs file suit on behalf of themselves and similarly situated individuals.  *See,* <u>Haviland v. Catholic Health Initiatives – Iowa</u>, 729 F. Supp. 2d 1038, 1063 n.17 (S.D. Iowa 2010) citing <u>Hunter v. Sprint Corp.</u>, 346 F. Supp. 2d 113, 120

(D.D.C. 2004)(noting that collective actions proceed as representative actions); <u>Gorey v. Manheim Servs. Corp.</u>, 2010 U.S. Dist. LEXIS 141868 at *8-9 (S.D.N.Y. Nov. 10, 2010).

In <u>Gries v. Standard Ready Mix Concrete</u>, the plaintiff filed a class action complaint on February 13, 2007.  252 F.R.D. 479 (N.D. Iowa 2008).  Plaintiff filed his motion for class certification 364 days after the original complaint had been filed.  <u>Id</u>. at 480.  Defendant argued that class certification should be denied for multiple reasons, including untimeliness pursuant to Local Rule 23a.  <u>Id</u>. at 481.  The Court denied certification on grounds that the class did not meet the numerosity requirement.  <u>Id</u>. at 488.  However, the Court addressed the application of LR 23 in a footnote when it stated:  "[t]he court notes that a delay in filing for class certification may constitute grounds for denying such a motion…Plaintiff Gries filed his motion…in apparent violation of Local Rule 23(a) which provides that: "In any action brought as a class representative action, the party seeking to maintain the action as a class or representative action must, within 180 days after commencement of the action, file a separate motion for certification.""  <u>Id</u>.  Similar to <u>Gries</u>, Plaintiffs undue delay in filing their motion for conditional certification 400 days after the initial action and 280 days after it was transferred to Iowa is fatal to Plaintiffs' motion, pursuant to LR 23.

The plaintiff in <u>Gallender v. Zurich</u> filed a civil lawsuit against the defendant on November 3, 2005 alleging ADEA violations, and seeking unpaid wages on behalf of himself and other similarly situated plaintiffs.  2007 U.S. Dist. LEXIS 7127 at 1-2 (S.D.MI 2007)[6].  Over a full year after the case was initially filed, plaintiff filed his motion for collective action certification on November 22, 2006.  <u>Id</u>. The court found that plaintiff's delay in filing his motion for conditional certification was fatal to his motion.  <u>Id</u>. at 5-7.  In this case, Plaintiffs' Motion was filed on March 17, 2010, over one year after the original complaint was filed, and 280 days after this case was transferred to the Southern District Court of Iowa.  There is no justifiable reason for Plaintiffs' delay.  Plaintiffs were aware that they would need to

---

[6] <u>Gallender</u> was decided in the context of a claim under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq.  Because the ADEA incorporates the FLSA, 29 U.S.C. § 216(b), this decision is applicable to FLSA claims.  <u>See</u> generally <u>Hoffman-LaRoche, Inc. v. Sperling</u>, 493 U.S. 165, 169 (1989); <u>Brooks v. BellSouth Telecomm., Inc.</u>, 164 F.R.D. 561, 566 (N.D. Ala. 1995).

seek conditional certification back in September 2010.  *See*, Ex H.  Still, nothing was filed for another
<u>seven months</u>.  Consequently, Plaintiffs' motion should be denied for their blatant disregard of LR 23.

### ii.    Plaintiffs' Motion Severely Prejudices Galaxy

In addition to violating LR 23, Plaintiffs' untimely motion severely prejudices Galaxy.  Prior to

March 17, 2011, mindful of LR 23, Galaxy was under the impression that Plaintiffs were not going to

bring a motion for conditional class certification.  Galaxy believed that Plaintiffs realized that a motion

for conditional certification would be futile given the clear differences in circumstances between

Plaintiffs and potential putative plaintiffs, the geographic locations of Galaxy's nationwide offices, and

the obvious differences in payment schedules between the Plaintiffs and putative plaintiffs.

Galaxy also believed that Plaintiffs would not be filing a motion for conditional class certification

because the Court's deadline of January 31, 2011 for completing discovery on issuing notice came and

went.  Certainly a motion for a conditional class would need to be filed prior to a discovery deadline on

the appropriateness of that very issue.  Prior to Plaintiffs' motion, Galaxy was not in a position to know

what discovery it needed since Plaintiffs did not identify or seek a conditional class.  Consequently, with

the understanding that Plaintiffs were seeking no more than the 6 consenting Plaintiffs, the pending

deadlines did not pose a concern for Galaxy.

As such, Galaxy is severely prejudiced because it is barred from obtaining discovery on the

appropriateness of issuing notice to the more than 500 installers that Plaintiffs now seek in a class.  This

is akin to adding a new party to litigation after discovery closed and is indisputably prejudicial as it limits

Galaxy's ability to conduct litigation. *See*, <u>Gries</u>, 252 F.R.D. at 488 n.5 (identifying that a delay in filing

for class certification bears on the adequacy of representation and that the court must balance the

prejudice resulting from such a delay against the counsel's ability to conduct the litigation).   Further,

Galaxy is severely prejudiced by the dispositive motions deadline that *is less than one month away*, and

trial that is set to begin in just six months.  At this point Galaxy does not know the identities of Plaintiffs

and cannot possibly prepare a dispositive motion let alone prepare for a federal trial.  Additionally,

Plaintiffs' Motion seeks that Plaintiffs have 45 days to opt in, which brings us past the dispositive motion

deadline, and just four months prior to trial.  On April 11, 2011 Plaintiffs filed a motion to extend the upcoming deadlines (Doc. 62), seemingly acknowledging that they delayed in filing their motion and seeking all upcoming dates be altered by the Court as a result of Plaintiffs' own delinquent actions.

**B.    PLAINTIFFS' FAIL TO DEMONSTRATE THAT THEY ARE SIMILARLY SITUATED TO OTHER PUTATIVE PLAINTIFFS**

Plaintiffs' motion provides no evidence of similarly situated plaintiffs.  Instead, Plaintiffs' simply make a broad statement that misclassifying the installers as IC's makes over 500 installers similarly situated for a collective action under the FLSA.  *See*, pp. 6-8 of Plaintiffs' Motion.  Such a broad interpretation swallows the rule.  If all it takes is an alleged violation of the FLSA for there to be a conditional class, there would be no need to obtain conditional class certification by the Court and notice would automatically be issued. This is simply not the law.

   **i.    The Law**

Section 216(b) of the FLSA permits employees who are "similarly situated" to proceed collectively in representative actions. 29 U.S.C. § 216(b).  Only in appropriate cases, District Courts have discretion to facilitate notice to potential plaintiffs who are "similarly situated."  *See*, Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 169 (1989).  In determining whether an FLSA lawsuit should proceed as a "collective action" the majority of courts, including Iowa District Courts, have adopted a two-step process.  Bouaphakeo, et al. v. Tyson Foods, Inc., 564 F. Supp. 2d 870, 889 (N.D. Iowa 2008).

The first stage is known as the "notice stage."  Id. at 891.  Before conditionally certifying a collective action, and authorizing notice to be issued, a court must find that the named plaintiffs and other potential plaintiffs are, in fact, similarly situated, and that the case is appropriate for representative litigation.  *See*, Id.; *See also*, Camper v. Home Quality Mgmt., Inc., 200 F.R.D. 516, 519 (D.Md. 2000).  A court's inquiry is not whether it has the discretion to conditionally certify a class and authorize notice, but whether the case is appropriate for the exercise of that discretion.  Although the burden at the first step is "more lenient," Plaintiffs must present more than mere allegations to support conditional certification, and are required to present evidence to support the allegations. Bouaphakeo, 564 F. Supp. 2d at 892.  A

court must also determine that a collective action would be manageable.  Id. *See also,* Ray v. Motel 6 Operating, L.P., 1996 U.S. Dist. LEXIS 22564 at *7-9 (D.C. Minn., Feb. 15, 1996)(in addition to similarity, courts must also consider manageability).

For a defendant, conditional certification is a severe turn of events because at that point, the court may authorize notice to potential plaintiffs.  *See,* Bouaphakeo, 564 F. Supp. 2d at 890.  Although a defendant will be permitted to move for decertification later, at the second stage, and the plaintiff will be held to a higher standard at that time, the hope of future decertification provides little solace to a wrongly accused employer whose business may be severely disrupted by court-sponsored communications accusing it of misconduct.  *See*, Flores v. Lifeway Foods, Inc., 289 F. Supp. 2d 1042, 1046-47 (N.D. Ill. 2003).  Because conditional certification and notice is, in effect, a solicitation inviting persons who are not parties, to join the litigation, discretion in granting conditional certification, and in authorizing notice must be exercised with great care.  As the Court stated in Severtson:

> [i]n seeking court-authorized notice, plaintiffs are in effect asking [the] court to assist in their efforts to locate potential plaintiffs and thereby expand the scope of the litigation…the sending of notice and consent forms to potential plaintiffs implicates concerns in addition to orderly case management.  The courts, as well as practicing attorneys, have a responsibility to avoid the "stirring up" of litigation through unwarranted solicitation.  Severtson v. Phillips Beverage Co., 137 F.R.D 264, 266-67 (D. Minn. 1991).

Consequently, a plaintiff seeking representative status and court-facilitated notice bears the burden of demonstrating that he is situated similarly to other putative plaintiffs and the case is appropriate for collective action.  *See,* Smith v. Heartland Automotive Servs. Inc., 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005).

### ii.    The Application of the Economic Realities Test Dictates That Plaintiffs Are Not Similarly Situated Because of the Individualized Determination

Plaintiffs do nothing more than allege Galaxy misclassified its independent contractors, but fail to provide any evidence that there was a common policy or plan carried out at all locations it seeks to include in the class.  *See,* Doc 57, pp. 7, 8.  Consequently, from reviewing the Affidavits provided in support of Plaintiffs motion, it is clear that the representative Plaintiffs are not similarly situated to the

other putative class members.   The individualized determination of an employee v. independent contractor under the FLSA's economic realities test alone is enough to deny conditional class certification in this case. *See* In re Fed Ex Ground Package Systems Inc., Employment Practices Litigation, 662 F. Supp 2d 1069, 15 WHC 2d 161, 170 (ND Ind. 2009)(denying conditional class certification under the FLSA to a nationwide class allegedly misclassified as independent contractors because the economic realities test necessitates an individualized examination of multiple factors creating a lack of similarity among putative class members).   Under the economic realities test, the following criteria are used in determining whether an individual is an employee or independent contractor:   1) right to control; 2) opportunity for profit or loss; 3) investment in equipment or materials required for employment; 4) the degree of skill required; 5) the degree of permanency and duration of the working relationship; and 6) the extent to which the service rendered is an integral part of the employer's business.  Id. at 1083.

Here, Travis Lee's affidavit in support of his response brief to Plaintiffs' Motion (Doc. 63-1) lays out the various individualized determinations and factors regarding the Putmans independent contractor status and other installers that contracted with HD.   Because of these individualized determinations Plaintiffs' fail to demonstrate that they are similarly situated to other HD installers as well as Galaxy installers.

### iii.     Plaintiffs Seek a Class of Galaxy ICs, but Representative Plaintiffs were ICs for HD Only

Plaintiffs cannot show that Galaxy's IC's were similarly situated to the Putmans because the Putmans were contractors of a completely separate company, HD.   The proposed representative plaintiffs were independent contractors who contracted directly with HD, and were never independent contractors of Galaxy.   Ex. A.   On the contrary, the added Plaintiffs to date, Skrzyniarz, Ghadban, Tursky, and Clooney, each contracted directly with Galaxy, and performed installation services directly for Galaxy. Ex. A.   The Putmans were paid directly from HD while those individuals who contracted with Galaxy were paid directly from Galaxy.   Although Terry Putman alleges in his affidavit that he signed an independent contractor agreement with Galaxy, Dennis Voss denies this assertion and believes the

document to be a forgery.  Ex. A.  The agreement provided by Terry Putman in support of his affidavit fails to contain a provision with respect to choice of law, is not signed by a Galaxy representative, and is not dated.  Moreover, in his affidavit, Terry admits that he was not paid by Galaxy, and that his checks were issued by HD.  *See*, Exhibit D, a copy of check stubs produced by Terry and Rob Putman.

The affidavit of Plaintiffs' legal counsel further demonstrates the significant differences between proposed members of the collective action.  In Kimberly Musick's affidavit, she found that there were seven (7) different versions of Galaxy's independent contractor agreement that it entered into with its independent contractors, all of which had significant differences.  These differences included: (1) an indemnification clause for three of the versions; (2) a requirement for certification with the Satellite Broadcasting & Communication Association; (3) a requirement that installers maintain a deposit with Galaxy for use upon termination of the agreement; (4) differing clauses relating to the choice of law in the event a dispute arises; and (5) one of the versions did not have a miscellaneous provisions section.  *See,* Musick's Affidavit attached to Plaintiffs Motion as Exhibit K.  These differences would be in effect for both Plaintiffs, and those individuals who have not yet opted into this litigation.

### iv.    The Named Plaintiffs Worked Out of HD's Bettendorf, Iowa Office and Plaintiffs Seek a Nationwide Class

The Putmans also differ from Skrzyniarz, Ghadban, Clooney and Tursky with respect to their geographic location.  Skrzyniarz, Ghadban, and Tursky are all Illinois residents who performed installation services as independent contractors out of Galaxy offices located in Northwest Illinois.  In contrast, the Putmans performed installation services for HD only, out of the Bettendorf, Iowa office.  Finally, Clooney performed installation jobs out of Missouri, Iowa and Illinois, operating out of Galaxy's Bettendorf, Iowa office location.

In Ray v. Motel 6 Operating Limited Partnership, the plaintiff assistant managers filed a collective action for alleged failure to pay overtime wages.  1996 U.S. Dist. LEXIS 22564 at *2.  In Ray, the plaintiffs worked at a minimum of thirty-nine different properties, located in twenty different states.  Id. at 10. In determining that the class would not be conditionally certified, the court determined that the

illegal overtime plan alleged by the plaintiffs was not necessarily carried out through central management and that the alleged overtime violations varied from region to region.  Id. at 10-12.

Similar to Ray, Plaintiffs' proposed collective action would encompass multiple plaintiffs that performed installation services throughout the nation, spanning eight different states.  Here, each region had its own Area Manager (AM) which had specific policies regarding his/her individualized determinations with respect to each independent contractor within that particular region, including what pay level they would be placed, and what work orders would be assigned.  Ex. E, F.  These determinations were made based upon that independent contractors skills, ability to accomplish the task timely, and whether the quality of workmanship for completing the assignment.  Ex. F.

### v.     The Putmans Were Paid Differently Than Galaxy's IC

Galaxy's evidence also demonstrates that its IC's were not similarly situated to the Putmans.  In determining whether to conditionally certify a collective action, courts must also review and consider defendant's submissions that provide sufficient facts and information to refute the information provided in the plaintiff's affidavits.  See, Freeman v. Wal-Mart Stores, Inc., 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003); Boyle v. Barber & Sons, Co., 2004 U.S. Dist. LEXIS 29168 at *11-12 (W.D. MO., May 21, 2004).

Galaxy's affidavits demonstrate that Plaintiffs are not similarly situated with proposed members of a collective action.  Plaintiffs were not independent contractors of Galaxy.  Ex. A.  Plaintiffs did not receive paychecks from Galaxy, and were not assigned work assignments through Galaxy.  Exs. A, G. Skrzyniarz, Ghadban, Tursky, and Clooney each signed an independent contractor agreement with Galaxy.  Ex. A.  As Galaxy independent contractors Skrzyniarz, Ghadban, Tursky, and Clooney were subjected to different payment provisions than Rob and Terry Putman.  See all affidavits provided by Plaintiffs in support of their Motion, Exhibits E, F, G, H, I, and J; See also, Ex. E.  Significantly, Galaxy's independent contractors were paid on a three-tiered system, while HD contractors, such as Terry and Rob Putman, were not (as indicated in Terry and Rob Putman's declarations).  Ex. E.

In West v. Border Foods, Inc., the plaintiffs filed suit for alleged FLSA violations due to the defendant company's failure to pay overtime wages and for misclassifying the plaintiffs as exempt

employees when they should have been hourly employees.  2006 U.S. Dist. LEXIS 96963 at *11 (D.C. Minn. June 12, 2006).  In denying the plaintiffs' motion for conditional certification, the court found that the plaintiffs were employed at different store locations, where different individual restaurant managers used varying means to deprive the plaintiffs of proper compensation, and the nature of the asserted violation differed among plaintiffs, and some plaintiffs claimed fewer overtime wages than others.  Id. at 27.

Similar to West, the proposed collective action would encompass multiple plaintiffs that performed installation services throughout the nation, spanning eight different states.  Similar to West, Plaintiffs and potential opt-in plaintiffs are located in multiple states and multiple offices.  Just as compensation varied from region to region in West, Plaintiffs' own affidavits indicate that the method of payment for the proposed collective action class also varied from region to region, and varied depending upon whether the individual was an IC for Galaxy, or an IC for a Separate Contracting Company[7] that performed services for Galaxy (like HD).  Aleksandr Turskiy, Ihab Ghadban, Adam Skrzyniarz, and Steve Clooney each indicate in their affidavits that while performing work as satellite technicians for Galaxy, they were placed into one of three levels in payment structure, depending on several factors, including:  quality of job, customer satisfaction, and connectivity.  Exs. E, F, G.  They allege that Galaxy determined what level each technician was placed.

In contrast, neither Terry nor Rob Putman's affidavit indicates that they were paid under a similar structure.  Their affidavits simply state: "I was paid job rates according to the type of installation or repair work I performed for a particular customer."  See, Ex. E and F to Plaintiffs' Motion.  Such a significant difference in determining pay alone should defeat Plaintiffs' motion for conditional certification.  See, Bouaphakeo, 564 F. Supp. 2d at 900 (a Northern District of Iowa case indicating that plaintiffs seeking to maintain an opt-in class action bear the burden to show that they are similarly situated with respect to their job requirements and pay provisions).

---

[7] Plaintiffs' Motion does not seek that these separate independent 'companies' ICs (other than HD's ICs) be a part of the collective action nor have they named them as parties; and therefore, there Galaxy does not address the vast differences between Galaxy's ICs and the completely separate companies' ICs in this brief.

C.    **PLAINTIFFS' PROPOSED CLASS FAILS BECAUSE IT IS NOT NARROWLY TAILORED TO "SIMILARLY SITUATED" INSTALLERS**

Plaintiffs' proposed collective action is too broad.  In a motion for conditional certification, a plaintiff must make "substantial allegations of class-wide discrimination, and provide detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary."  Grayson, 79 F.3d at 1097.  Plaintiffs have not met this burden.  Consequently, although notice should not be sent, if it is, it should only be sent to those persons who performed installation services for HD in Bettendorf, Iowa, the only company that the proposed representatives, Terry and Rob Putman provided DISH installation.

In Harper v. Lovett's Buffet, Inc., the named plaintiffs worked at one restaurant location where they were purportedly subjected to various violations of the FLSA.  185 F.R.D. 358, 361-63 (M.D. Ala. 1999).  The defendant owned multiple restaurants in multiple states.  In seeking notice to potential collective action members, plaintiffs argued that "each of Defendant's restaurants, regardless of its location, operates under centralized policies and procedures designed to minimize labor costs issued by Defendant's corporate office, and that these policies and procedures have resulted in widespread violations.  Id. at 362 n.5.  However, all of the affidavits submitted to support plaintiffs' motion for conditional certification were submitted by employees of a single restaurant.  Id. at 362-63.  The Court held that "[w]hile Plaintiffs have presented evidence that FLSA violations may exist with regard to certain hourly wage employees at Defendant's Dothan restaurant, there is a total dearth of factual support for Plaintiffs' allegations of widespread wrongdoing at Defendant's other restaurant."  Id. at 363.

As in Harper, Plaintiffs have not presented evidence that any installers, other than those who contracted with HD (Terry Putman, Rob Putman) and four individuals (three of which were out of the Rolling Meadows, Illinois office) were subjected to possible violations of the FLSA.  These are only two locations out of the fourteen (14) offices for which Plaintiffs are trying to include as part of the collective action.  Moreover, as discussed above in Section C., each of those potential plaintiffs was not similarly situated.  They were subjected to different payment provisions, were assigned tasks on an individualized

14

basis, were paid commensurate with their abilities and quality of work, and were all located in different regions throughout the United States.

**D.     PLAINTIFFS' PROPOSED COLLECTIVE ACTION WOULD BE UNMANAGEABLE**

Plaintiffs' must establish that a collective action would be manageable.  <u>Bouaphakeo</u>, 564 F. Supp. 2d at 892.  Here, Plaintiffs are unable to meet this burden, as the proposed collective action consists of individuals located throughout the United States, each with their own individualized questions.

In <u>Bouaphakeo</u>, the Northern District of Iowa found that the collective action could be manageable because all of the potential plaintiffs worked, or currently work at the same location – a processing plant in Storm Lake, Iowa.  564 F. Supp. 2d at 896-97.  Given the location of the potential plaintiffs, the court found that even though the class was a large number, it was not too large, or geographically displaced to be considered unmanageable.  <u>Id</u>. at 897.

In contrast, the Court in <u>Freeman</u> refused to permit notice to employees at every Wal-Mart Store in the country because it would have been unmanageable.  256 F. Supp. 2d 945.  In <u>Sheffield v. Orius Corp.</u>, the District Court of Oregon failed to issue conditional certification, finding that "dissimilarities among the putative class members extend to geography, work sites, and payment systems."  211 F.R.D. 411, 413 (D. Or. 2002).  In <u>Ray</u>, the Court found it significant when denying conditional certification that the class arose out of "different local offices," "different geographic locations," and "different supervisors and salaries."  1996 U.S. Dist. LEXIS 22565 at *10-11.  The court stated that the "discrepancies between Plaintiffs' employment circumstances and the significant problems inherent in a trial of 1000 plus individuals demonstrate that it is inappropriate to pursue this case as a class action."  <u>Id</u>. at 12.

Plaintiffs' proposed collective action spans eight states and multiple office locations, each with their own AMs.  Each AM had different policies and procedures in assigning DISH work orders to installers and in their level of pay.  These determinations were at the discretion of the AM and made on an individualized basis, based on each IC's skills and abilities.  Plaintiffs are seeking a collective action of approximately 588 individuals throughout eight different states and multiple offices.  Testimony would be required from each AM to discuss each location's policies and procedures and each individual installer.

This would be a nightmare to manage, with multiple issues being presented for each geographic location and for individual installer.  Galaxy would have to spend the time and money to have each AM and representative installers from their state of residence testify in Iowa.  The manageability of one jury trial in which there would be more than a dozen AMs testifying as to their and policies and consideration for more than 588 separate individuals would be confusing to the jurors and unmanageable.

**E.   PLAINTIFFS' PROPOSED JUDICIAL NOTICE FAILS TO MEET THE REQUIREMENTS FOR COURT AUTHORIZED NOTICE**

> **i.   Plaintiffs' Proposed Notice Fails Because It Gives Opt-In Plaintiffs The Impression of Judicial Sponsorship**

In approving notice to putative collective action plaintiffs, courts are careful not to create an "apparent judicial sponsorship of the notice."  Woods v. New York Life Ins. Co., 686 F.2d 578, 581 (7th Cir. 1982).  The reason for caution is that a judicial imprimatur would likely be misunderstood by the potential opt-in plaintiffs as a representation that the suit probably has merit.  Flores, 289 F. Supp. 2d at 1046-47 citing Woods, 686 F.2d at 581.  In Flores, the Court found that because the proposed notice submitted by the plaintiffs "read like any other pleading, with the name of the court, the title of the action, the file number, and the assigned judge" it likely would have been misunderstood as a representation that the suit probably has merit.  Flores, 289 F. Supp. 2d at 1047.  Consequently, the Court held that it would not have approved the plaintiffs proposed notice in that form.  Id.

Similar to Flores, Plaintiffs' proposed notice gives the misrepresentation that the suit has merit. The proposed notice reads like any other pleading.  The notice has the case caption, the title of the action, the name of the court, the file number, and the assigned judge.  See, Plaintiffs' Exhibit A.  In fact, the envelope proposed by Plaintiffs specifically states "Court Authorized Notice of Unpaid Overtime Lawsuit.  Deadline to Join."  See, Plaintiffs' Exhibit N.  Consequently, in its current form, Plaintiffs' proposed notice gives the improper impression that the underlying litigation has merit, and therefore, the court should not approve its issuance.  The Court should order removal of any statements regarding court authorized notice and the case caption.

     **ii.**     **Plaintiffs' Three Separate Methods of Notice Are Unnecessary, Overly Burdensome, and Gives the Impression that the Court Is Encouraging Individuals to Opt-In**

In their Motion, Plaintiffs propose that notice be issued via three separate methods: (1) by U.S. Mail; (2) as an insert with Galaxy's independent contractors' paychecks; and (3) posted in Galaxy's regional offices.  Three separate notices would be wholly unnecessary and improper.  In Smallwood v. Illinois Bell Telephone Co., the Court found that three separate letters to putative class members notifying them of a collective action was improper.  710 F. Supp. 2d 746, 753-54 (N.D. Ill. 2010).  The Court held that three separate mailings was "unnecessary and potentially could be interpreted as encouragement by the Court to join the lawsuit."  Id., citing Witteman v. Wisconsin Bell, Inc., 2010 U.S. Dist. LEXIS 8845 at *3 (W.D. Wis. Feb. 2, 2010).

Just as in Witteman, Plaintiffs seek to provide notice to the putative plaintiffs on three separate occasions.  This would give the impression to potential plaintiffs that the Court finds the underlying matter to have merit, and could be seen as encouragement by the Court to joint the lawsuit.  Moreover, notice via office postings and inserts in Galaxy's employees' checks would be improper, as such notice reached the wrong audience.  Galaxy no longer enters into independent contracting agreements with installers.  All installers are now Galaxy employees. Ex. E.  Each time a Galaxy employee saw the notice posted in the office that would effectively operate as another, separate notice.  Galaxy employees, who are not even at issue in this case, could be exposed to notice of this lawsuit dozens of times. Should the Court determine that notice is appropriate in this case, Galaxy would request that notice be issued on a one time basis via U.S. Mail.

     **iii.**     **Plaintiffs' Are Not Entitled To An Equitable Tolling of the Statute of Limitations**

Equitable tolling is not appropriate in this case.  In their motion, Plaintiffs seek to toll the statute of limitations purporting that Galaxy did not agree to send notice without Plaintiffs first bringing its motion for conditional class certification and refused to provide contact information for potential class members. Plaintiffs' reasons are unfounded.  Plaintiffs delayed in bringing this motion for conditional

certification and, even though they did not specifically request it, Plaintiffs already have the contact information for Galaxy's ICs.

Generally, opt-in Plaintiffs in an FLSA action are entitled to damages for two years (three, if willful) from the date the Plaintiff opts in.  There is "specific legislative intent that ordinary FLSA opt-in plaintiffs not have their filing dates relate back to the date of the original complaint for statute of limitations purposes." Muhammed v. GBJ, Inc., 2011 U.S. Dist. LEXIS 23589 at *5 (S.D. Texas, March 9, 2011).  As the Eleventh Circuit has stated, Congress "expressed concern that an opt-in plaintiff should not be able to escape the statute of limitations bearing on his cause of action by claiming that the limitations period was tolled by the filing of the original complaint." Grayson v. K-Mart Corp., 79 F.3d 1086, 1106-07 (11th Cir. 1996)(citing 93 Cong. Rec. 2,182 (1947).  However, equitable tolling of the FLSA's statute of limitations is appropriate where a plaintiff is prevented from asserting a claim because of wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond plaintiff's control made it impossible to file a claim on time.  Goudie v. Cable Communications, Inc., 2008 U.S. Dist. LEXIS 91313 (D.C.Or., Nov. 7, 2008).  Here, there is no fault of Galaxy and no extraordinary circumstances that would warrant tolling the statute of limitations.  Instead Plaintiffs failed to file a timely motion for conditional certification, which was detrimental for potential opt-in plaintiffs.

In Goudie, plaintiffs argued that the FLSA statute of limitations should have been tolled because of procedural delays and the defendant's refusal to produce a list of potential class members, which unfairly delayed notice to potential plaintiffs.  2008 U.S. Dist. LEXIS 91313 at *1.  The court disagreed, holding "if refusal to disclose contact information is sufficient basis to grant equitable tolling, either the FLSA statute of limitations is meaningless or the Courts are reading a disclosure requirement into the FLSA where the statute does not contain such a requirement.  Id. at *7 citing Prentice v. Fund for Pub. Interest Research, Inc., 2007 U.S. Dist. LEXIS 71122, at *9-10 (N.D. Cal. Sept. 18, 2007).  In making its determination, the court found that there were no extraordinary delays that would justify equitably tolling the statute of limitations, especially considering that the plaintiffs spent almost a full year litigating the action in state court prior to filing their case in federal court.

Similar to <u>Goudie</u>, Plaintiffs seek to equitably toll the statute of limitations because they claim Galaxy has refused to provide the contact information for potential plaintiffs.  First Plaintiffs never requested the contact information.  Even so, Plaintiffs already have all of the contact information for Galaxy's ICs because Plaintiffs were given the ICAs and the 1099 Forms in discovery, which include all of the addresses of the ICs.  *See* Galaxy's Rule 26a Disclosures attached as Exhibit I; *See* Galaxy's Answers to Plaintiffs' Requests for Documents attached as Exhibit J.  Furthermore, there is no class currently defined and Plaintiffs waited until March 17, 2011 to even seek a class so Galaxy had no way of knowing what, if any, installers Plaintiffs intended to include in a class.

The key for equitable tolling is that any delay must be a result of the <u>Defendants' actions</u>.  In this case, <u>any delay is a result of Plaintiffs actions</u> or lack thereof.  Plaintiffs filed their original complaint on February 2, 2010 in an inappropriate venue.  After this case was transferred to an appropriate venue, the parties held an initial FRCP 26(f) conference in September 2010 during which time Galaxy's counsel promptly advised that Galaxy would not consent to notice being issued without Plaintiffs first seeking conditional class certification.  Consequently, Plaintiffs knew for seven months that they had to file a motion for conditional certification.  Plaintiffs waited until the eleventh hour to file the motion for conditional certification.  Now, Plaintiffs seek to deflect blame on Galaxy for their own failure to diligently pursue this matter.  Plaintiffs should not be rewarded for the lack of diligence.  Consequently, any argument for equitable tolling is futile due to no fault of Galaxy.  Consequently, Galaxy would request that this Court deny Plaintiffs request to equitably toll the statute of limitations.

## IV. <u>CONCLUSION</u>

WHEREFORE, Defendant, Galaxy 1 Marketing, Inc., requests that this Court deny Plaintiffs' Motion for Conditional Certification / To Issue Notice to Similarly Situated Persons Under 29 U.S.C. §216(b).  Galaxy further requests oral argument due to the complicated and involved nature of the issues presented before the court.

Dated this 18 day of April, 2011.

Respectfully Submitted,
Kevin M. O'Hagan
Jamie L. Filipovic
Matthew D. May
O'HAGAN SPENCER, L.L.C.
One East Wacker Drive, Suite 3400
Chicago, Illinois 60601
(P) 312-422-6100; (F) 312-422-6110
Email: kohagan@ohaganspencer.com
Email: jfilipovic@ohaganspencer.com
Email: mmay@ohaganspencer.com
&
WHITFIELD & EDDY, P.L.C.
317 Sixth Avenue, Suite 1200
Des Moines, IA 50309
Telephone: (515) 288-6041; Fax: (515) 246-1474
Email: SDoohen@whitfieldlaw.com

By__/s/ Stephen Doohen_____
     STEPHEN DOOHEN
ATTORNEYS FOR DEFENDANT GALAXY 1
MARKETING, INC.

## CERTIFICATE OF SERVICE

This is to certify that on this **_18th day of April 2011**, I electronically filed **Defendant, Galaxy 1 Marketing, Inc.'s Brief in Response to Plaintiffs' Motion for Conditional Certification / To Issue Notice to Similarly Situated Persons Under 29 U.S.C. §216(b),** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Douglas M. Werman
David Erik Stevens
Maureen Ann Bantz
Werman Law Office, P.C.
77 West Washington
Suite 1402
Chicago, Illinois 60602
dwerman@flsalaw.com
dstevens@flsalaw.com
mbantz@flsalaw.com

Patrick Murphey
Jeffrey E. Krumpe
Miller Hall & Triggs LLC
Commerce Bank Building
416 Main Street, Suite 1125
Peoria, Illinois 61602
jeffrey.krumpe@mhtlaw.com
ann.stommel@mhtlaw.com

James D. Helenhouse
Fletcher & Sippel LLC
29 North Wacker Drive
Chicago, Illinois 60606
jhelenhouse@fletcher-sippel.com


/s/ Stephen E. Doohen